**In re Douglas E. BOOTH, Debtor.**

No. 99–33854.

United States Bankruptcy Court, N.D. Ohio.

June 30, 2000.

L. Douglass McCrury, Toledo, OH, for debtor.

Elizabeth A. Vaughan, Toledo, OH, Interim Trustee.

John J. Hunter, Toledo, OH, Interested Party.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Debtor's objection to the Trustee's Motion for Turnover. The specific items of property, against which the Debtor interposes his Objection, concern the Trustee's entitlement to a profit-sharing check that the Debtor received from his employer in 1999, and that portion of the Debtor's 1999 tax refunds which are related to his post-petition earnings. In support of their respective positions concerning the profit-sharing check, each Party submitted legal Memorandum to the Court. In addition, the Court received a Brief Amicus Curiae in support of the Trustee's Motions for Turnover of the profit-sharing check. The Court has now had the opportunity to review the legal arguments presented by the Parties, as well as the entire record of this case. Based upon that review, and for the following reasons, the Court finds that the Trustee's Motion for Turnover should be Granted to the extent provided for in this Opinion.

### FACTS

The Debtor, Douglas E. Booth, is an employee of the Daimler–Chrysler Corporation, and a member of United Auto Workers (UAW). As a member of the UAW, the Debtor is involved in a profit-sharing program with the Daimler–Chrysler Corporation, the terms of which were negotiated by the UAW on behalf of its members. Under the terms of this profit-sharing program an individual, except for a few minor circumstances, must be employed with the Daimler–Chrysler Corporation at the end of the year to receive any benefits from the program. Furthermore, under the terms of the program, any benefits received by an employee are not distributed until the following year, and until that time, the profit-sharing agreement provides that such funds are non-assignable. With regards to any distributions that are made from the profit-sharing program, employees of the Daimler–Chrysler Corporation have the option of placing

such funds in a 401(k) account. The Defendant, however, at least for purposes of the 1999 work year, did not take this option.

On September 17, 1999, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code. Shortly thereafter, the Trustee, Elizabeth A. Vaughan, in accordance with the duties prescribed to her by the United States Bankruptcy Code, investigated the Debtor's financial affairs. This investigation subsequently revealed the Debtor's involvement in the Daimler–Chrysler profit-sharing program. Pursuant to this discovery, the Trustee, on December 7, 1999, filed a Motion to have the Debtor turnover any bonus or profit-sharing check that he might receive as a result of his involvement in the Daimler–Chrysler profit-sharing program for the 1999 calendar year. In addition, contained in the Trustee's Motion was a request that the Debtor turnover Copies of his 1999 Federal and State Tax returns, along with any Federal and/or State tax refunds that he might receive for the year 1999. With regards to these latter two requests, however, the Debtor's sole point of objection extends exclusively to the Trustee's effort to recover that portion of his tax refund(s) which is related to his postpetition earnings, a position which is entirely in accord with a recent decision issued by this Court. *In re Vinson*, Case No. 99–31808 (Bankr. N.D.Ohio May 25, 2000). Accordingly, for purposes of this Opinion, the Court's analysis will be confined to addressing solely that portion of the Debtor's Objection related to the Trustee's request that he turnover his 1999 profit-sharing check. With respect to this issue, the Parties have stipulated to the Court the following factual information:

-The Debtor was an employee of the Daimler–Chrysler Corporation throughout the 1999 calendar year;

-the Debtor was on the active roll at Daimler–Chrysler at the end of the 1999 calendar year and was not on layoff, leave of absence, or sick leave. Nor had he retired or died or been terminated, either voluntarily or involuntarily;

-on March 3, 2000, the Debtor received a profit-sharing check from the Daimler Chrysler Corporation in the net amount of $4,866.51;

-the above payment was made to the Debtor pursuant to the terms of the profit-sharing contract entered into between the Daimler–Chrysler Corporation and the UAW.

Of the Four Thousand Eight Hundred Sixty-six and 51/100 dollar ($4,866.51) profit-sharing check received by the Debtor, the Trustee seeks a pro-rata share of this check in the amount of Three Thousand Four Hundred Sixty-six and 56/100 dollars ($3,466.56).[1]

## LAW

Section 541 of the Bankruptcy Code provides in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the

---

1. This amount was calculated by the Trustee as follows:

–Daimler–Chrysler profit-sharing check $4,866.51

–Less postpetition pro rata share [$4,866.51 divided by 365 multiplied by 105] $1,399.95

–Estate Portion $3,466.56

debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law–

(A) that restricts or conditions transfer of such interest by the debtor;

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

## DISCUSSION

The overall issue presented by the Parties in this case can be framed as this: Does a profit-sharing check received from an employer become a part of a debtor's bankruptcy estate when the proceeds from the check, although partially earned prior to the filing of the debtor's bankruptcy petition, are not actually issued until after the debtor's bankruptcy petition is filed? As such a determination concerns the administration and liquidation of the Debtor's bankruptcy estate, this matter is a core proceeding over which this Court has jurisdiction to enter final judgments and orders. 28 U.S.C. § 157(b); *Vaughan v. Union Bank & Savings Co. (In re Grieger)*, 172 B.R. 222, 223–24 (Bankr.N.D.Ohio 1994).

Under § 541(a) of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate, the effect of which is that all property included within the estate is subject to liquidation by the bankruptcy trustee to satisfy the claims of the debtor's creditors. Conversely, any property that does not fall within the scope of estate property under § 541(a) is not subject to administration by the trustee, and is therefore available to the debtor. In conformance with these principles, the Debtor asserts that the Four Thousand Eight Hundred Sixty-six and 51/100 dollar ($4,866.51) profit-sharing check he received from his employer falls outside the scope of estate property under § 541(a), and thus is not subject to being administered by the bankruptcy trustee. In support thereof, the Debtor asserts that at the time he filed for bankruptcy relief, he had no interest in the profit-sharing check which could pass to the Trustee under § 541(a). In the alternative, the Debtor, contends that even if his interest in the profit-sharing check became property of his bankruptcy estate in accordance with § 541(a), this interest, by virtue of the anti-alienation clause contained in the Daimler–Chrysler profit-sharing program, was thereafter excluded under § 541(c)(2). In additional support thereof, the Debtor contends that, prior to distribution, the UAW held the funds of his profit-sharing check in trust. In opposition to these arguments, the Trustee asserts that given the broad reach of § 541(a), the Debtor, at the time he filed for bankruptcy relief, had an interest in the profit-sharing check which passed to the Trustee. In addition, the Trustee maintains that the Debtor's profit sharing check is akin to an Earned Income Tax Credit (EIC), a form of property which has already been determined to be property of a debtor's bankruptcy estate notwithstanding the fact that a debtor may not have a present right to the property. *See Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611 (6th Cir.2000). After considering the merits of these arguments, the Court finds, based upon the following analysis, that the Trustee's position is better supported in law.

Section 541(a)(1) governs what property of the debtor becomes property of the bankruptcy estate, and provides, with only a few minor exceptions, that property of the estate includes all property interests of

the debtor at the time the bankruptcy petition is filed. Specifically, it is provided in § 541(a) that property of the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." According to the legislative history, the purpose of § 541(a) was to "bring everything of value that the debtor has into the estate." H.R. Rep. 95–595, 95th Cong., 1st Sess. 176 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6136. However, fundamental to the concept of estate property is that the debtor must have an interest in the property. Consequently, merely because a debtor has some sort of connection to an article or item of property is not, in itself, sufficient to place such property within the scope of § 541(a).

■ Under § 541(a), the determination as to whether a debtor's interest in property constitutes estate property is a question of federal law. However, unless there are strong countervailing federal interests, state law controls what interest, if any, a debtor actually has in property. *In re Greer*, 242 B.R. 389, 394 (Bankr.N.D.Ohio 1999) *citing Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). In this regard, the Court notes that although there are no cases directly on point, Ohio law has operated under the basic assumption that a person can have an alienable or otherwise assignable property interest in a bonus or profit-sharing arrangement. *Januzzi v. Hickman*, 61 Ohio St.3d 40, 41, 572 N.E.2d 642, 643 (Ohio) (Assuming that a debtor's right to a profit-sharing check may be garnished); *Bank One Cleveland, N.A. v. Lincoln Electric Co., Inc.*, 55 Ohio Misc.2d 7, 563 N.E.2d 381 (Cuy.Cty.Com.Pl.1990) (an employee's bonus is subject to a garnishment action). Moreover, it is not a prerequisite under Ohio law that for a person to have an interest in property that

such an interest be accompanied by actual possession or an immediate right to possession of the property. *See Moore v. Foresman*, 172 Ohio St. 559, 565, 179 N.E.2d 349, 353 (1962) ("a future interest, whether contingent or executory, is alienable."). Thus, for purposes of this analysis, the Court will presume that the Debtor, for purposes of Ohio law, held an interest in his profit-sharing check prior to distribution.

■ The Debtor, however, asserts that regardless of whether Ohio law may confer upon an individual an interest in a bonus or profit-sharing arrangement, such an interest would not pass to the Trustee for purposes of § 541(a). In support thereof, the Debtor points out that his right to receive the check from his employer, beside being conditioned upon his employer earning a profit, was also conditioned upon such factors as his employment with the Company at the year's end. In addition, the Debtor pointed out that because of such contingencies, he had no right, at the time he filed his bankruptcy petition, to bring an action in either law or equity to recover any funds that he would later become entitled to receive under his employer's profit-sharing program. Thus, the Debtor's legal argument basically holds that a person's interest in property must be vested, as opposed to contingent, before that interest will pass to the bankruptcy estate. The Court, however, while agreeing with the Debtor that at the time he filed his bankruptcy petition his interest in the profit-sharing check was contingent, does not agree with the Debtor's legal conclusion therefrom. In particular, it is this Court's position that given the broad definition afforded to "property of the estate" under § 541(a), (see discussion, supra), it was the intent of Congress that the contingency of an interest in property under state law would not affect whether

such an interest became property of the debtor's bankruptcy estate for purposes of § 541(a). This position is fully in accord with prior decisions reached by this Court, as well case law from other districts which have addressed the issue. *Buckeye Union Ins. Co. v. Four Star Constr. Co. (In re Four Star Constr. Co.),* 151 B.R. 817, 820 (Bankr.N.D.Ohio 1993); *In re Reynolds,* 50 B.R. 20, 21 (Bankr.C.D.Ill.1985); *In re Knight,* 164 B.R. 372, 374 (Bankr.S.D.Fla. 1994); *In re Turner,* 29 B.R. 628, 631 (Bankr.D.Me.1983); *Middleton v. Plumbing and Air Conditioning Contractor's Ass'n of Arizona (In re Greer Stump Plumbing, Inc.),* 9 B.R. 181, 185 (Bankr. D.Ariz.1981). In fact, just recently this Court, in addressing a similar issue, stated:

> a contingent interest can be defined as one in which there is no present fixed right of either present or future enjoyment; but in which a fixed right will arise in the future under certain specified contingencies. Hence, the nature of a contingent interest is that the holder may never realize his interest, or may only realize it at some point in time in the distant future. However, unlike a mere expectancy interest, a contingent interest in property confers upon its holder a true interest in that item of property.

242 B.R. 389, 399 (Bankr.N.D.Ohio 1999) (internal quotations and citations omitted).

 Once more, this result does not change merely because the debtor did not have the right, at the time he filed for bankruptcy relief, to commence an action in state court to recover on his profit-sharing claim. *See Banner v. Bagen (In re Bagen),* 186 B.R. 824 (Bankr.S.D.N.Y. 1995) (a contingent contractual right based upon future personal service is property of the estate to the extent that any sums received are attributable to prepetition

services). Instead, such a restriction would have merely limited the Trustee's ability to recover on such a claim; it being a fundamental principle of bankruptcy law that a trustee can acquire no greater of a right in property than the debtor. *North Georgia Toyota v. Jahn (In re Tom Woods Used Cars, Inc.),* 24 B.R. 529, 530 (Bankr. E.D.Tenn.1982). Notwithstanding, the Court does agree, as the Debtor correctly points out, that a bankruptcy trustee is not free to administer a case in perpetuity in the hopes of recovering a contingent interest that a Debtor may have in property. Specifically, § 704(1) of the Bankruptcy Code imposes upon a bankruptcy trustee the duty to close a bankruptcy estate "as expeditiously as is compatible with the best interest of parties in interest[.]" However, in this regard a bankruptcy trustee is given a great deal of discretion, and in this case the Court cannot find that the Trustee has abused her discretion. *See Yadkin Valley Bank & Trust Co. v. Northwestern Bank (In re Hutchinson),* 132 B.R. 827, 832 (Bankr.M.D.N.C.1991) (because of the complexity of bankruptcy proceedings, bankruptcy trustees are vested with considerable discretion). In particular, leaving a case open for less than one (1) year, in the hope of recovering Three Thousand Four Hundred Sixty-six and 56/100 dollars ($3,466.56) seems, in accordance with § 704(1), compatible with the best interest of the Debtor's creditors. Accordingly, for the above stated reasons, the Court finds that at the time the Debtor sought the protections of this Court, the Debtor had an interest in his profit-sharing check which passed to the Trustee in accordance with § 541(a).

The Debtor, however, asserts that even if his interest in the profit-sharing check passed to the Trustee under § 541(a), this interest is thereafter excluded by paragraph (c)(2) of § 541, which affords the only real exception to the general rule that

all legal and equitable interests of the debtor pass to the bankruptcy estate. Specifically, § 541(c)(2) provides that, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The legislative history of this section indicates that it was intended, among other things, to preserve the effectiveness of the spendthrift trust. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6325; *Howison v. W.W. Grainger, Inc. (In re Peterson)*, 88 B.R. 5, 7 (Bankr. D.Me.1988).

◼ In support of his compliance with § 541(c)(2), the Debtor calls this Court's attention to the fact that the Daimler–Chrysler profit-sharing agreement contains an anti-alienation clause. However, for a debtor's property to be excluded from the bankruptcy estate under § 541(c)(2) a debtor, in addition to establishing the existence of an anti-alienation clause, must establish two additional elements: (1) the debtor has a beneficial interest in a trust; and (2) the transfer restriction is enforceable under applicable nonbankruptcy law. *In re Yuhas*, 186 B.R. 381, 383–84 (Bankr.D.N.J.1995).

In support of his compliance with the first of the above stated requirements, the Debtor contends that the profit-sharing arrangement he had with the Daimler–Chrysler Corporation created either an express or constructive trust with himself as the beneficiary. The Court, however, must disagree.

**2.** Under Ohio law, a constructive trust is a remedial device utilized to prevent fraud and unjust enrichment, and is created by operation of law against the holder of a legal right to property which that person should not, in equity and good conscience, hold or enjoy.

◼ To begin with, after thoroughly reviewing the Debtor's profit-sharing agreement with the Daimler–Chrysler Corporation, the Court could not find that even the minimum requirements needed to create an express trust under Ohio law were in existence; these requirements being: (1) an explicit declaration of a trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created; (2) an intention to create a trust; and (3) the actual conveyance or transfer of the trust property to the trust. *Ulmer v. Fulton*, 129 Ohio St. 323, 339–40 195 N.E. 557, 564 (Ohio 1935). For example, in this case there is no explicit declaration in the Daimler–Chrysler profit-sharing agreement that a trust was to be set up by the UAW with the Debtor as a beneficiary. Once more, the Court, from the facts presented in this case, could not discern any intent on the part of the UAW or the Daimler–Chrysler Corporation to create a trust. Similarly, the Court cannot find that a constructive trust [2] was created for the benefit of the Debtor as a constructive trust is only imposed "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Bilovocki v. Marimberga*, 62 Ohio App.2d 169, 171, 405 N.E.2d 337, 338 (Ohio Ct. App.1979). In this case, however, there is simply no evidence or even an allegation that the Daimler–Chrysler Corporation wrongfully withheld any property from the Debtor. Accordingly, for these reasons, the Court will not exclude the Debtor's profit-sharing check from the scope of estate property under § 541(c)(2).

*Bilovocki v. Marimberga*, 62 Ohio App.2d 169, 171, 405 N.E.2d 337 (Ohio Ct.App.1979); *Union Savings and Loan Assoc. v. McDonough*, 101 Ohio App.3d 273, 655 N.E.2d 426 (Ohio Ct.App.1995).

With respect to the foregoing holding, however, the Court observes that a different result may have been mandated if the Debtor were to have designated an ERISA based fund to be the recipient of his profit-sharing check. For example, in *Patterson v. Shumate*, the Supreme Court of the United States held that the term "applicable non-bankruptcy law" in § 541(c)(2) was not limited to state law, but also included ERISA and other federal law, and the anti-alienation provision required for an ERISA qualified profit-sharing plan was an enforceable restriction on a transfer of property for purposes of § 541(c)(2). 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). In this case, however, despite the fact that an option was available to the Debtor to designate an ERISA qualified plan to be the recipient of his profit-sharing check, no such designation was actually made, and in the absence of such a designation, the Court will not find that one exists. In addition, it should be pointed out that in opposition to the argument made by the Debtor, the incorporation of the anti-alienation clause in Daimler–Chrysler's profit-sharing agreement will not, standing alone, cause the profit-sharing check to be excluded from the scope of estate property as § 541(c)(1)(A) provides that:

> Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law-
>
> (A) that restricts or conditions transfer of such interest by the debtor[.]

██ Having thus concluded that the Debtor's profit-sharing check is property of the estate under § 541(a), and that such an interest was not thereafter excluded by § 541(c)(2), one final issue needs to be addressed; namely what portion of those funds the Debtor received from his profit-sharing check are subject to administration by the Trustee? In this respect, the Court, after examining the Daimler–Chrysler profit-sharing agreement, notes that the amount of an employee's profit share is based upon that employee's "eligible pay," [3] which presumably accumulates evenly throughout the whole year. (I.e., depending on such factors as overtime, layoffs, sick leave and vacation time, a full-time employee will presumably work five (5) days a week throughout the entire year.) Accordingly, based upon this supposition, the Court holds that, in conformance with the Trustee's request, the Debtor shall be required to turnover to the Trustee a pro-rata share of his profit-sharing check as calculated from the date on which his bankruptcy petition was filed. It should be emphasized, however, that this holding does not necessarily mean that this will be the outcome in all profit-sharing situations. To the contrary, if it can be clearly shown that the receipt of a profit-sharing award is in a greater proportion based upon the rendition of postpetition services, then any proceeds received for such postpetition services will be excluded from the debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a)(6) (earnings from services performed postpetition are not property of the estate). However, in this regard, the Court will place upon the debtor the burden to show that a pro-rata share is not a proper method of allocation as they are clearly in the best position to supply the needed information regarding what portion of their profit-sharing check was earned as a result of postpetition services.

---

**3.** "Eligible Pay" is, in part, partially defined in the Daimler–Chrysler profit-sharing agreement as "Straight Time Hourly Base Wages." § 2.06.

In conclusion, the Court holds that the portion of the Debtor's profit-sharing check related to his prepetition earnings is property of the bankruptcy estate pursuant to § 541(a). Moreover, such funds are not excluded from property of the estate by virtue of paragraph (c)(2) of § 541. Therefore, the Debtor must turnover to the Trustee that portion of his profit-sharing check acquired from his prepetition wages, which in this case will be calculated on a pro-rata basis. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Trustee's Motion for Turnover be, and is hereby, GRANTED; and that the Debtor's Objection thereto be, and is hereby, OVERRULED.

It is **FURTHER ORDERED** that the Debtor, Douglas E. Booth, turnover to the Trustee his state and federal income tax returns for the tax year 1999.

It is **FURTHER ORDERED** that the Debtor, Douglas E. Booth, turnover to the Trustee that portion of his 1999 tax refunds related to his prepetition earnings. This amount shall be calculated pro-rata based upon the date on which the Debtor petitioned this Court for bankruptcy relief.

It is **FURTHER ORDERED** that the Debtor, Douglas E. Booth, turnover to the Trustee that portion of his 1999 profit-sharing check related to his prepetition earnings. This amount shall be calculated pro-rata based upon the date on which the Debtor petitioned this Court for bankruptcy relief.