DEFIANCE PRODUCTION CREDIT ASSOCIATION, APPELLEE, *v.* HAKE ET AL.; ODENWELLER MILLING COMPANY, APPELLANT.

(No. WMS-80-10—Decided December 19, 1980.)

*Messrs. Weaner, Hutchinson, Zimmerman & Bacon* and *Mr. Reeder C. Hutchinson,* for appellee.
*Mr. William J. Wildenhaus,* for appellant.

POTTER, P. J. Defendant-appellant, Odenweller Milling Company, appeals from the judgment of the Court of Common Pleas of Williams County, claiming in its sole assignment of error, that:

"The Judgment is contrary to law and to the weight of the evidence."

The plaintiff-appellee, Defiance Production Credit Association, loaned money to defendants Larry and Arlene Hake for the purchase of hogs. As collateral for the loan, the Hakes executed notes, real estate mortgages, and a security agreement wherein plaintiff was given a security interest in the hogs to be purchased. This security interest was perfected by the filing of a financing statement in the Williams County Recorder's Office.

The Hakes orally contracted with various farmers for the boarding of the hogs purchased, and with various feed supply companies for the feeding of the hogs. The appellant was one of these feed suppliers. Under the parties' arrangements, the feed suppliers brought feed to the farms upon which the

Hakes' hogs were boarded, filling the feed bins as provided by the boarding farmers. The hogs were, at all time relevant, in the actual possession of these boarding farmers.

Subsequently, the Hakes fell into default of their loan from the plaintiff; plaintiff then filed a five-count complaint seeking a money judgment on the Hakes' notes, foreclosure of their mortgages, and a marshalling of liens upon its collateral, the hogs. The boarding farmers and the feed suppliers were brought into the action as party-defendants by the plaintiff's original complaint, its amended complaint, and by a motion to intervene by defendant Ney Co-Operative Grain Company.

Following the filing of various counterclaims and cross-claims by these defendants, and responses thereto, the plaintiff filed a "motion for separate trials" seeking a separate hearing and adjudication of the parties' respective rights and priorities in the subject hogs. The motion was granted, and a separate hearing was held on these issues on July 17, 1978. The trial court's decision and judgment entry provide the subject matter of this appeal. (The final judgment entry resolved the case as to all parties; however, only appellant has appealed.)

The defendant boarding farmers and the defendant feed suppliers all claimed, in the trial court, a statutory lien upon the subject hogs pursuant to R. C. 1311.48, which provides, in pertinent part, as follows:

"Any person who feeds or boards an animal under contract with the owner shall have a lien on such animal to secure payment for food and board furnished."

The defendants further claimed that their alleged statutory lien upon the subject hogs was entitled to a priority of payment over the security interest of the plaintiff by virtue of R. C. 1309.29, which provides as follows:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

The trial court held, in its decision, that R. C. 1311.48 afforded both the defendant boarding farmers and the defen-

dant feed suppliers a lien upon the subject hogs, finding, as a matter of law, that R. C. 1311.48 does not require possession of the animals serviced as a condition precedent to lien validity. Since the subject hogs were at all times in the possession of the boarding farmers, however, the trial court found that the feed suppliers' liens were not entitled to any priority under R. C. 1309.29.

We disagree with the trial court's initial conclusion of law concerning R. C. 1311.48. For the following reasons, we hold that actual, physical possession of animals is a necessary precondition to a valid lien upon the animals under R. C. 1311.48.

Under the common law, no lien in favor of a person who fed or cared for another person's animal was recognized. Legislation has been enacted in most states, however (in Ohio, R. C. 1311.48 to R. C. 1311.51), to abrogate this common law rule, and to place such persons in a legal status comparable to those whose services with respect to personal property are protected by the common law "artisan's lien." 4 American Jurisprudence 2d 322, Animals, Section 74; 3 Ohio Jurisprudence 3d 598, Animals, Section 28. Possession of personalty was and is regarded as an essential incident of this common law lien's creation and continuance. 34 Ohio Jurisprudence 2d 425, Liens, Section 16.

Construing the statutory predecessors to R. C. 1311.48 and 1311.49, the Ohio Supreme Court held that a person furnishing feed and care to another's animal must have and retain possession in order to enforce a lien against the animal. *Seebaum* v. *Handy* (1889), 46 Ohio St. 560. The court reached this conclusion despite the lack of an express requirement of such possession in the statutory language construed in that case.

Similarly, in the present language of R. C. 1311.48, there is no express requirement of possession. That code section must, however, be read *in pari materia* with R. C. 1311.49. 50 Ohio Jurisprudence 2d 192, Statutes, Section 218. The latter code section enables one asserting a lien upon an animal to sell the animal at a public sale, after fulfilling certain notice requirements. Construing R. C. 1311.48 and 1311.49 together, we find that:

" * * * [T]he intention of the legislature was, in enacting

them, to give to the person furnishing such food and care a lien upon the animal * * * with the incidents of a lien at common law in analogous cases. * * * " *Seebaum* v. *Handy, supra,* at 566.

See, also, *Ahlswede* v. *Schoneveld* (1971), 87 Nev. 449, 488 P. 2d 908, wherein the Supreme Court of Nevada construed a comparable Nevada statute to require possession of an animal in order for an "agister's" lien to be valid. Compare the above-mentioned statutes of Ohio and Nevada to the "feedman's lien" statute involved in *Leger Mill Co., Inc.,* v. *Kleen-Leen, Inc.* (Okla. 1977), 563 P. 2d 132, where the Oklahoma Supreme Court noted that a feedman's lien was a "non-possessory" lien.

The trial court reached a different conclusion; and, to the extent that its judgment was based upon its conclusion that the feed suppliers had a valid lien upon the subject hogs under R. C. 1311.48, despite their lack of possession of the hogs, this basis for the judgment was erroneous. The trial court's error does not require reversal, however, because the court properly found plaintiff's security interest to have priority over the appellant's claim upon the subject hogs.

It has been generally recognized that UCC 9-310 (R. C. 1309.29) only affords priority, over secured parties, to holders of "possessory" liens. *Leger Mill Co., Inc.,* v. *Kleen-Leen, Inc., supra;* Notes and Comments, Nonconsensual Liens Under Article 9, 76 Yale L. J. 1649 (1967). The boarding farmers in the present case had possession of the subject hogs, and their R. C. 1311.48 "possessory" liens were, therefore, properly afforded a priority pursuant to R. C. 1309.29. With respect to the appellant, however, its lack of possession of the subject hogs prevented it from obtaining a R. C. 1311.48 lien, and it could, therefore, claim no priority pursuant to R. C. 1309.29.

The appellant claims that once the subject hogs were sold, and the proceeds therefrom escrowed pending the outcome of this litigation, the question of possession became moot, and that it was, therefore, entitled to the proceeds pursuant to R. C. 1311.49. The record clearly bears out, however, that the subject hogs were sold by agreement of the parties to this action, to maintain the status quo during litigation, and were not sold pursuant to R. C. 1311.49 in enforcement of a R. C. 1311.48 lien. Appellant also claims that it had constructive possession of the hogs because the proceeds from the sale of

the hogs were held in bank deposits in its name, and that that form of possession was sufficient for the purposes of R. C. 1311.48 to give it a valid lien. We have already noted, however, our conclusion that R. C. 1311.48 and 1311.49 contemplate actual physical possession of animals upon which a lien is claimed.

Finding appellant's contentions herein to be without merit, and on the basis of our foregoing conclusions of law, we find the appellant's sole assignment of error not well taken. The judgment of the Court of Common Pleas of Williams County is affirmed for the reasons stated.

*Judgment affirmed.*

CONNORS and WILEY, JJ., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.